## Leo Singer, Appellee, v. W. D. Boyce Paper Mills Company, Appellant.

### Gen. No. 4,894.

CONTRIBUTORY NEGLIGENCE—*when person injured by falling into elevator shaft guilty of. Held,* under the evidence in this case, that the plaintiff, who was injured by falling into an elevator shaft, was guilty of contributory negligence which precluded his recovery.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed March 11, 1908.

H. L. RICHOLSON and FRANK M. COX, for appellant.

E. J. KELLY and BUTTERS, ARMSTRONG & FERGUSON, for appellee.

MR. PRESIDING JUSTICE WILLIS delivered the opinion of the court.

Appellee, Leo Singer, was injured while employed by appellant, Boyce Paper Mills Company. The building where he was hurt, sometimes called the "cement mill," contained the machinery room, the beater room and the elevator shaft. The machinery room occupied the east end of the building. West of the machinery room, and connected with it by a large door, was the beater room, in which were tanks or vats. There were windows on the west side, opening upon a large uncovered platform. The elevator shaft, extending one or more stories above the first floor and into a pit sixteen feet below the floor of the beater room, projected from the south wall of the beater room, having an opening on each of its four sides about 3.8 feet wide by seven feet in height. That on the north side was the only opening on the south side of the beater room; that on the south side was over a railroad track that ran along the south side of the building. The east opening was upon a platform extending east along the south side of the building. The west opening was upon a platform, at the end of which was a plank runway thirty-three feet long that led to the ground. There were doors to these openings which were left open except when the weather was cold and were open at the period here in question. Gates were also provided that closed automatically when the elevator went up or down and opened automatically when it was on a level with the floor of the beater room and the platform east and west of the shaft. There was what was called a dog house about twenty feet long by fifteen feet wide, adjoining the beater room on the south side of the west wall, with a door connecting the two rooms. There was also a door on the south side of the dog house opening out on a small platform from which steps led to the

ground. Across switch tracks, southwest of the cement mill and disconnected with it, was a pulp mill. Appellee, nineteen years of age, entered the employ of appellant on Monday morning, April 23, 1906, and worked Monday, Tuesday and Wednesday nights conveying material into the beater room. At about three o'clock, Thursday morning, he and Perry, a fellow workman went to the pulp mill for a drink of water, returning by different ways. Appellee, in coming back, went up the incline at the west end of the south platform, which was west of the elevator shaft. The elevator was up, the gates were tied up and planks were laid side by side from the west platform to the beater room on which to walk over the opening. Appellee did not notice these planks and fell into the shaft.

He, by his next friend, brought this suit in the Circuit Court of LaSalle county against appellant to recover damages resulting from injuries claimed to have been sustained by him from his fall into the elevator shaft. His declaration contained two counts averring in substance that appellant while the elevator was above the first story, and the building insufficiently lighted, negligently suffered the elevator shaft to be open and unguarded by gates, whereby plaintiff, then but nineteen years old, and without experience and knowledge concerning the construction of buildings, elevators and machinery, and while attempting to enter the building, in the exercise of due care, unavoidably stepped and fell into the elevator shaft and was thereby injured. Appellant interposed the plea of not guilty. There was a trial and verdict of $2,000 and a motion for a new trial by appellant. The court required a *remittitur* of $999. Appellee desired to remit $1,000 but on the objection of appellant, this was denied. He remitted $999. The motion for a new trial was overruled, judgment was entered on the verdict for $1,001 and this appeal was taken.

The apparent preponderance of the evidence is that about twelve o'clock, Wednesday night, Cooper, en-

gineer of the beater room, finding that the elevator was stuck above, told appellee and Perry of the situation, and said that they would have to put boards across the elevator and get in the sulphite at which they were at work, just the same; that with the help of Erickson, a workman, he placed two two-inch planks eight or nine feet long and ten inches wide, side by side, across the opening, diagonally from the west opening of the elevator shaft to the floor of the beater room, then raised the gates; that from that time on until they went to the pulp mill for a drink, appellee and Perry continuously wheeled sulphite over these planks into the beater room. Appellee's proof tends to show, however, that it was on Tuesday night that this occurred, and that he had not been at the elevator shaft since that, and was not at the shaft on the night he was injured at all until the accident.

The situation, then, is this: Appellee was nineteen years old, had been a student in the public schools of Ottawa, and had had some experiences with machinery, so that inexperience cannot be attributed to him. He knew that the elevator moved up and down; that it was not always level with the floor of the beater room and the platforms. He had wheeled sulphite over the opening when the elevator was not there. He knew that there were gates to guard the entrance when the elevator was up or down below the level of the platforms, but he also knew that sometimes when the elevator was not there, the gates were fastened up and planks were put in on which to walk across the opening. He testified himself that the last time he passed through there or was near the elevator shaft prior to his injury, he knew the gates were fastened up, and that he wheeled material over the planks across the shaft into the beater room. He says, however, that this was the night before the accident, and his proof tends in a measure to corroborate his claim. Appellant's proof strongly tends to show that it was the night of the accident and immediately preceding his being hurt. It is

unnecessary to decide which is correct. In either event he walked into the elevator shaft with the gates and elevator up, when the last time he had been there he had walked through it on planks with them in the same position. It is immaterial whether this was a few minutes before the accident or the night before. He could not rely upon the fact that the gates were up to show that the elevator was there. While there is some conflict in the evidence as to the amount of light in the building, it is clear from appellee's own testimony that the light was sufficient for a person who looked to see the gates up and the planks across the shaft.

We are of the opinion that the evidence does not tend to establish appellee's averments that he lacked age, experience and knowledge concerning the construction of the building, elevators and machinery, that the building was insufficiently lighted, that he was in the exercise of due care or that he unavoidably fell into the elevator shaft. As he had last seen and walked across the shaft in that condition, in not looking to see whether the planks were still there or whether the platform was there he was guilty of negligence that contributed to his injury. Appellee knew the unguarded hole was there, that the planks laid across it. He knew the extent and condition of the light.

The judgment is reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment:
We find that appellee at the time he was injured was not in the exercise of due care for his own safety and that the lack of such care contributed to the injury.